THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS LAVELLE MOSLEY, Defendant-Appellant.

Third District   No. 3—97—0014

Opinion filed October 22, 1998.

Dan Kirwan and Edwin J. Anderson (argued), both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the judgment of the court and the following opinion:

The defendant was convicted in a jury trial of first degree murder (720 ILCS 5/9—1(a)(1) (West 1994)) and sentenced to a term of 40 years' imprisonment. The defendant appeals, contending that the trial court erred in striking his affirmative defense of compulsion. He also challenges the constitutionality of the truth-in-sentencing statute. Although we decline to determine the constitutionality of the truth-in-sentencing law, we affirm the defendant's conviction.

## FACTS

On April 25, 1996, the defendant, a 17-year-old member of the Black Disciples street gang, drove a fellow gang member, Nikia Perry, to the Harrison Homes in Peoria, whereupon Perry shot and killed Marshall Dunnigan, Jr. The evidence at trial showed that a member of the Black Disciples, Anthony Metcalf, had been killed that same day by a rival gang, the Gangster Disciples, and the murder of Dunnigan was done in retaliation.

The defendant testified that he joined the Black Disciples at the age of 15 because he feared for his own life and the life of his

mother. Once in the gang, he was forced to memorize their rules and obey their commands. If he did not do so, he would be "violated," or beaten by fellow gang members.

The defendant testified that he had in the past disobeyed the gang's rules and orders, and as a result he suffered serious beatings on at least two occasions. The evidence confirmed that the defendant had been briefly hospitalized because he was beaten on the head with a pistol and suffered a back injury as a result of a beating.

The defendant also testified that he was supposed to be on watch when Metcalf was killed. Because the defendant failed to abide by this duty, Metcalf was killed.

As a result of the killing, the cominister of the defendant's gang, Frank Tyler, ordered the defendant and Perry to participate in the killing of a Gangster Disciple. The defendant asserted that if he did not follow this order, he or his mother would have suffered a severe violation or even death.

Complying with Tyler's order, the defendant drove Perry to the Harrison Homes. Upon seeing a young African-American male walking alone, Perry ordered the defendant to stop the car. The defendant testified that if he disobeyed, he was afraid that Perry, who had a gun in his lap, would kill him. Thus, the defendant stopped the car, and Perry got out of the car and shot and killed Dunnigan.

The defendant was convicted of first degree murder in a jury trial. He was sentenced to a term of 40 years' imprisonment.

Before trial, the defendant attempted to assert the affirmative defense of compulsion. He wanted to introduce evidence to show that he had been compelled to participate in the murder because of the circumstances of his life, his forced membership in a gang, and threats of physical violence. The defendant also wanted to introduce the testimony of an expert who would have testified that the defendant had been particularly susceptible to gang recruitment, the gang carried cult-like powers, and the defendant was so fearful of his life that he did not have the intent to aid Perry in the murder.

However, on motion of the State, the defense of compulsion was stricken, and the expert was not allowed to testify. The defendant asserts that the refusal to allow the defense of compulsion denied him a fair trial because the jury was prevented from considering his theory of the case, from receiving expert testimony

regarding gang compulsion, and from receiving an instruction on compulsion.

On appeal, the defendant contends that: (1) the trial court erred in denying him the opportunity to present the affirmative defense of compulsion; and (2) his sentence under the truth-in-sentencing law is void because that law is unconstitutional.

## ANALYSIS

I. The Compulsion Defense

■ A ruling on a motion to strike an affirmative defense is a ruling of law. *First of American Trust Co. v. First Illini Bancorp, Inc.*, 289 Ill. App. 3d 276, 284, 685 N.E.2d 351, 357 (1997). As with all questions of law, we will conduct a *de novo* review. See *People v. Greene*, 289 Ill. App. 3d 796, 801, 682 N.E.2d 354, 357 (1997).

■ The defendant contends that he should have been able to assert the affirmative defense of compulsion. In support of this contention, he points to the language of section 7—11(a) of the Criminal Code of 1961, which states that "[a] person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct." 720 ILCS 5/7—11(a) (West 1994).

■ Since the defendant, due to his age, was not subject to the death penalty, he contends that he should have been allowed to assert a compulsion defense. See 720 ILCS 5/9—1(b) (West 1994). However, the defendant's argument is without merit.

Our supreme court has held that "[t]he defense of compulsion[,] *** as a matter of legislative intent, is unavailable to one charged with murder." *People v. Gleckler*, 82 Ill. 2d 145, 157, 411 N.E.2d 849, 854 (1980). The court noted that when the defense of compulsion was first codified in 1827, the crime of murder was automatically punishable with death. *Gleckler*, 82 Ill. 2d at 155-56, 411 N.E.2d at 853-54. Determining that the legislature intended to apply the common law rule that "one ought himself to die rather than escape through the murder of an innocent," the court concluded that the legislature intended for the defense of compulsion to be unavailable to one charged with murder. *Gleckler*, 82 Ill. 2d at 156, 411 N.E.2d at 854.

This rule has been consistently followed by other courts. See, e.g., *In re D.C.*, 244 Ill. App. 3d 55, 68, 613 N.E.2d 1139, 1148 (1992) (stating that compulsion is not a defense in a case where the accused was a juvenile in a murder prosecution); *People v. Clark*, 207 Ill. App. 3d 439, 451, 565 N.E.2d 1373, 1380 (1991) (noting that compulsion does not constitute a legal defense to murder); *People v. Calvillo*, 170 Ill. App. 3d 1070, 1079, 524 N.E.2d 1054, 1060 (1988) (stating that compulsion was not an available defense to a defendant who was convicted of murder on an accountability theory).

The defendant points to two cases to support his contention that the defense of compulsion is available to a defendant in a noncapital murder case. However, neither of these cases supports the defendant's position in the instant case.

Indeed, in *People v. Serrano*, 286 Ill. App. 3d 485, 676 N.E.2d 1011 (1997), the defendant's murder conviction was reversed because he was not allowed to present the compulsion defense at trial. However, in that case, the defendant was convicted of armed robbery and felony murder. The court held that the defendant should have been able to introduce the compulsion defense because it was a defense to the underlying crime, armed robbery. *Serrano*, 286 Ill. App. 3d at 490-91, 676 N.E.2d at 1015. In the instant case, the defendant was charged with murder under an accountability theory, not with felony murder. Therefore, *Serrano* is clearly distinguishable.

The defendant's reliance on *People v. Denton*, 256 Ill. App. 3d 403, 409, 628 N.E.2d 900, 904 (1993), is also misplaced. In determining that counsel for the minor defendant was not ineffective for asserting a compulsion defense in his murder trial, the court found it unnecessary to decide the legal validity of the defense. As a result, *Denton* is not instructive.

For the foregoing reasons, we are not persuaded to deviate from the clear and unambiguous expression of our supreme court that "the defense of compulsion is unavailable in any murder prosecution." *Gleckler*, 82 Ill. 2d at 160, 411 N.E.2d at 856. The fact that a defendant is not eligible for the death penalty does not enable him to assert a compulsion defense in a prosecution for murder. Accordingly, we find that the trial court did not commit error when it struck the affirmative defense of compulsion in the instant case.

## II. Constitutional Challenge

The defendant next contends that his sentence is void because it was imposed pursuant to the truth-in-sentencing law and that statute is unconstitutional. More specifically, he contends that the truth-in-sentencing statute, which was passed as part of Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995 (amending 730 ILCS 5/3—6—3 (West 1994)), was enacted in violation of the Illinois Constitution's "single subject rule" (Ill. Const. 1970, art. IV, § 8(d)).

This court recently ruled that the constitutionality of the truth-in-sentencing law is not properly raised on direct review of a judgment of conviction but must instead be raised by way of an action for *habeas corpus, mandamus* or declaratory judgment. *People v. Watford*, 294 Ill. App. 3d 462, 690 N.E.2d 1009 (1997). That reasoning was rejected by the Appellate Court, Second District, in *People v. Reedy*, 295 Ill. App. 3d 34, 692 N.E.2d 376 (1998), and by the Appellate Court, Fourth District, in *People v. Pitts*, 295 Ill. App. 3d 182, 691 N.E.2d 1174 (1998). However, the Appellate Court, Fifth District, in *People v. Gooden*, 296 Ill. App. 3d 205, 694 N.E.2d 215 (1998), recently agreed with the decision in *Watford*.

Having carefully considered the decisions in *Reedy, Pitts* and *Gooden*, we reaffirm our holding in *Watford* and decline to address the sentencing issue raised by the defendant in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

JUSTICE LYTTON, specially concurring:

I concur with the analysis of the majority in section I of the opinion. I write this special concurrence regarding section II concerning the constitutional challenge to the truth-in-sentencing statute. I specially concur solely for purposes of *stare decisis*. However, I disagree with the result and reasoning of the court's decision on the truth-in-sentencing issue for the reasons stated in my dissent in *People v. Watford*, 294 Ill. App. 3d 462, 690 N.E.2d 1009 (1997).

JUSTICE KOEHLER, specially concurring in part and dissenting in part:

The defendant contends that his sentence should be vacated because Public Act 89—404, in which the truth-in-sentencing provisions were included by the legislature, violated the Illinois Constitution's "single subject rule." Ill. Const. 1970, art. IV, § 8(d). The majority holds that the defendant must challenge the constitutionality of Public Act 89—404 by filing a *habeas corpus* petition, a petition for writ of *mandamus*, or an action for declaratory judgment directed at the Illinois Department of Corrections, and, in so holding, the majority refused to reach the issue of the constitutionality of Public Act 89—404. *People v. Watford*, 294 Ill. App. 3d 462, 465-66, 690 N.E.2d 1009, 1010 (1997) (Lytton, J., dissenting). Here the majority, in essence, reaffirms the *Watford* holding.

This court must determine whether the legislature enacted Public Act 89—404 in a *manner* that violates our state constitution. The Illinois Constitution prohibits the enactment of bills that encompass more than one subject. It provides, in pertinent part:

"Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d).

Our supreme court in *Johnson v. Edgar*, 176 Ill. 2d 499, 512, 680 N.E.2d 1372, 1378 (1997), explained that alleging that an act violates the single subject rule is, by definition, a challenge directed at the act *in its entirety*. In this case, no one provision or feature of the act that is challenged as unconstitutional can be remedied by a subsequent amendment that simply deletes or alters the provision or feature. *Johnson*, 176 Ill. 2d at 512, 680 N.E.2d at 1378. Indeed, a single subject challenge does not address the substantive constitutionality of the act's provisions at all. *Johnson*, 176 Ill. 2d at 512, 680 N.E.2d at 1378. Rather, a single subject challenge goes to the very structure of the act and the process by which it was enacted. *Johnson*, 176 Ill. 2d at 512, 680 N.E.2d at 1378. Thus, if this court were to determine that Public Act 89—404 in its structure is invalid, the Act cannot stand. *Johnson*, 176 Ill. 2d at 512, 680 N.E.2d at 1378.

Since the single subject rule is a substantive requirement for the passage of bills and is therefore subject to judicial review, the constitutionality of Public Act 89—404 must be raised on direct ap-

peal. *Johnson*, 176 Ill. 2d at 512, 680 N.E.2d at 1379. Consequently, I cannot join in the majority judgment affirming the defendant's sentence, and I concur only in the judgment affirming defendant's conviction and the circuit court's denial of the defendant's attempt to assert compulsion as an affirmative defense.